UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JONATHAN HOLLIS, individually and on behalf of all others similarly situated,<br><br>                     Plaintiff,<br><br>    v.<br><br>AUDIBLE, INC.,<br><br>                     Defendant. | CASE NO. 2:24-cv-01999-TL<br><br>ORDER ON MOTION TO DISMISS |

This matter is before the Court on Defendant Audible, Inc. ("Audible")'s Motion to Dismiss. Dkt. No. 19. Having considered Plaintiff's response (Dkt. No. 22), Defendant's reply (Dkt. No. 23), and the relevant record, and having held oral argument, the Court DENIES Defendant's motion.

                                      I.     BACKGROUND

Audible is an online platform selling audiobooks and other audio titles. Dkt. No. 1 (Class Action Complaint) ("Complaint") ¶ 14. This action arises from Defendant's practice of selling

credits, which customers can use to purchase audiobooks or other audio titles, as part of customers' memberships. *Id.* ¶ 2.

Each of Defendant's tiered premium membership levels provides customers with a certain number of credits on a monthly or yearly basis. *Id.* ¶ 4. Defendant advertises to customers that these credits are "good for any title in our premium selection, yours to keep forever." *Id.* Members of the Audible Premium Plus $14.95-per-month plan receive one credit per month, while Audible Premium Plus $22.95-per-month plan members receive two credits per month. *Id.* ¶¶ 3, 14. Audible Premium Plus Annual $149.50-per-year plan members receive 12 credits per year, while Audible Premium Plus Annual $229.50-per-year plan members receive 24 credits per year. *Id.* Customers are also able to purchase gift memberships that supply credits to the recipient. *Id.* ¶ 18.

Unused Audible credits expire one year after issue. *Id.* ¶ 6. Plaintiff, an Audible membership holder, contends that this practice is in violation of Washington law, which makes it "unlawful for any person or entity to issue, or to enforce against a bearer, a gift certificate that contains . . . [a]n expiration date." RCW 19.240.20. Over the past six years, Plaintiff received multiple credits through his Audible membership that expired prior to being used. *Id.* ¶ 22. Plaintiff seeks to represent a class of all persons within the United States who purchased Audible credits that expired within the applicable statute of limitations. *Id.* ¶ 24.

## II.   LEGAL STANDARD

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may seek dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing an FRCP 12(b)(6) motion to dismiss, the Court takes all well-pleaded factual allegations as true and considers whether the complaint "state[s] a claim to relief that is plausible

ORDER ON MOTION TO DISMISS – 2

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "When reviewing a dismissal pursuant to Rule . . . 12(b)(6), 'we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[], the non-moving party.'" *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (alteration in original) (quoting *Snyder & Assocs. Acquisitions v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

### III.  DISCUSSION

Defendant contends that Plaintiff fails to allege facts sufficient to establish that Audible credits constitute gift certificates under Washington's gift certificate statute, Chapter 19.240 RCW, leading to the failure of all his claims. *See* Dkt. No. 19 at 10.

**A.    Claim Under Washington's Gift Certificate Statute, Chapter 19.240 RCW**

**1.    Whether the Statute Requires a Voucher to State a Monetary Value**

"In 2004, the Washington State Legislature passed RCW 19.240.020 to 'prohibit acts and practices of retailers that deprive consumers of the full value of gift certificates, such as expiration dates, service fees, and dormancy or inactivity charges on gift certificates.'" *Newell v. Recreational Equipment Inc.*, No. C19-662, 2019 WL 4688782, at *3 (W.D. Wash. Sept. 26, 2019) (quoting RCW 19.240.005). The Washington State Legislature intended the statute to "be liberally construed to benefit consumers." RCW 19.240.005. The statute provides that "it is unlawful for any person or entity to issue, or to enforce against a bearer, a gift certificate that contains . . . [a]n expiration date." RCW 19.240.020. For the purposes of that section, the

ORDER ON MOTION TO DISMISS – 3

Washington Legislature defines gift certificate to mean "an instrument evidencing a promise by the seller or issuer of the record that consumer gifts or services will be provided to the bearer of the record to the value or credit shown in the record." RCW 19.240.010.

At the center of the issue here is the term "the value or credit shown in the record" as it is used in the statute's definition of "gift certificate." *See* RCW 19.240.020(2)(a). Defendant argues that the term "value or credit shown in the record" must be interpreted to mean "a stored value or credit worth a specified amount of *cash*." Dkt. No. 19 at 10–11. But Plaintiff contends that this construction "seeks to impose additional restrictions on what counts as a gift certificate under the statute." Dkt. No. 22 at 6. The legislature directed that "any ambiguities should be resolved by applying the [revised] uniform unclaimed property act to the intangible property in question." RCW 19.240.005. However, the Uniform Unclaimed Property Act does not contain any definitions for the terms "gift certificate," "value," or "credit." RCW 63.30.010.

This appears to be a matter of first impression. The Parties have not identified, and the Court is unable to find, any Washington case discussing whether the definition of "gift certificate" is limited to a voucher identifying a specific monetary value under Washington's gift certificate statute. "When interpreting a state statute as a matter of first impression, a federal court must 'determine what meaning the state's highest court would give to the law.'" *Mykland v. CommonSpirit Health*, No. C21-5061, 2021 WL 4209429, at *7 (W.D. Wash. Sept. 16, 2021) (quoting *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 998 (9th Cir. 2017)). "Thus, the court 'must follow the state's rules of statutory interpretation.'" *Id.* (quoting *Brunozzi*, 851 F.3d at 998).

        a.    **Plain Meaning**

"Under Washington law, rules of statutory interpretation require a court to 'first look to the plain meaning of the statute.'" *Id.* (quoting *Matter of Dependency of E.M.*, 197 Wn.2d 492,

499, 484 P.3d 461 (2021)). "Plain 'meaning is discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.'" *Associated Press v. Washington State Legislature*, 194 Wn.2d 915, 920, 454 P.3d 93 (2019) (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002)). "Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous." *Id.* (quoting *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996)). "Only if the statute remains ambiguous—that is, 'susceptible to more than one reasonable meaning'—is it appropriate to resort to legislative history." *Id.* (quoting *Campbell & Gwinn*, 146 Wn.2d at 12).

        Plaintiff's argument that the ordinary meanings of the terms "value" and "credit" contained in the definition of the term "gift certificate" do not attach to a specific monetary amount comports with the ordinary meaning of the terms, which are defined in the dictionary as, inter alia, "a fair return or equivalent in goods, services, *or* money for something exchanged" and "the balance in a person's favor in an account," respectively. Dkt. No. 22 at 7–8 (emphasis added) (quoting Merriam-Webster Online Dictionary, https://www.merriam-webster.com/). But Defendant argues, and the Court acknowledges, that other courts have interpreted similar statutes containing the term "value . . . shown in the record" to mean that the voucher at issue must identify a monetary value, even where the language of the statute does not explicitly impose a requirement that the voucher at issue state a cash value. Dkt No. 23 at 1–4. For example, a similar Minnesota statue defines a "gift certificate" as "a tangible record evidencing a promise, made for consideration, by the seller or issuer of the record that goods or services will be provided to the owner of the record to the value shown in the record . . . ." Minn. Stat. § 325G.53, subd. 1 (a). Interpreting that definition, the District of Minnesota determined that the term "value" as used in the Minnesota statute should be interpreted "[c]onsistent with its

ORDER ON MOTION TO DISMISS – 5

common usage," as meaning "that the customer can purchase goods or services up to the stated cash amount shown in the tangible record rather than a particular good or service." *Hughes v. CorePower Yoga, LLC*, No. C12-905, 2013 WL 1314456, at *4 (D. Minn. Mar. 28, 2013).

Both Parties advance reasonable interpretations of the plain language, and the statute is therefore ambiguous. *See State v. Ervin*, 169 Wn.2d 815, 821–22, 239 P.3d 354 (2010).

### b.   Statutory Construction

As the plain meaning of the statute is ambiguous, the Court turns to tools of statutory construction. *See Ervin*, 169 Wn.2d at 823.

### (1)   Interpretations of Similar Statutes

In arguing that the term "to the value or credit shown" must refer to a monetary value or monetary credit, Defendant relies heavily on two cases: *Wells v. Holiday Cos., Inc.* (*Wells II*), 862 N.W.2d 492 (Minn. Ct. App. Apr. 20, 2015), and *Hughes*, 2013 WL 1314456. Dkt. No. 19 at 7–8. The Court finds both cases distinguishable.

*Wells II* and *Hughes* both involved the Minnesota gift certificate statute that defines "gift certificate" as "a tangible record evidencing a promise, made for consideration, by the seller or issuer of the record that goods or services will be provided to the owner of the record to the value shown in the record . . . and for which the value is decreased upon each use." Minn. Stat. § 325G.53, subd. 1(a). Defendant asserts that:

> In *Wells v. Holiday Cos.*, the plaintiff, like Hollis, argued that "the word 'value' as it is used in the definition of 'gift certificate' . . . is not limited to cash value, but instead includes monetary and non-monetary value." 862 N.W.2d 492, 496 (Minn. Ct. App. 2015). The Minnesota Court of Appeals rejected that argument because, "[i]f the legislature intended the definition of a gift certificate to include a tangible record promising that a certain good or service would be provided to the holder of the record, *then it would not have been necessary for the legislature to include the phrase 'to the value shown in the record.'*" *Id.* at 497 (emphasis added). The same is true here.

ORDER ON MOTION TO DISMISS – 6

Dkt. No. 23 at 7 (omission in original). Defendant further argues that Plaintiff's proposed construction "improperly ignores" the ordinary meaning of the term "gift certificate," (Dkt. No. 23 at 9–10), reasoning that the *Wells II* court "rejected the same argument that Plaintiff makes here":

> Wells is correct that because the legislature defined 'gift certificate' in Minn. Stat. § 325G.53—the very definition at issue in this case—this court would not ordinarily rely on a dictionary definition to define that term. But the issue in this case is the meaning of 'value' within the definition of 'gift certificate.' . . . Thus, it is helpful to know that the dictionary definition of that term interprets the value of a gift certificate in terms of monetary value.

Dkt. No. 23 at 10 (omission in original) (quoting *Wells II*, 862 N.W.2d at 496). The *Wells II* court went on to hold that the definition of the term "value" is "cash value," 862 N.W.2d at 496–97. Defendant urges the Court to adopt the same interpretation of the term "value" in the Washington statute. But the Court is not obligated—and declines—to adopt this interpretation.

First, despite the fact that the Minnesota statute defined "gift certificate," Minn. Stat. § 325G.53, subd. 1(a), the Minnesota Court of Appeals still decided to look to a dictionary. *Wells II*, 862 N.W.3d at 496. The *Wells II* court thought it was "relevant . . . to consider how the term "value" is used in the dictionary definition of "gift certificate." *Id.* Yet the word the court defined was "gift certificate" and not "value." Next, the court applied one dictionary definition of "gift certificate" that termed "gift certificate" as "[a] certificate worth a specified amount of money." *Wells II*, 862 N.W.2d at 496 (quoting *The American Heritage Dictionary* 742 (5th ed. 2011)). However, there is another equally viable definition of the term—"a certificate entitling the recipient to receive goods or services of a specified value from the issuer"—which does not clearly "interpret[] the value of a gift certificate in terms of monetary value." *Gift Certificate*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/gift%20certificate; Dkt. No. 23 at 10. Accordingly, the ordinary meaning of the term "gift

ORDER ON MOTION TO DISMISS – 7

certificate" offers no insight into the issue presented by the Parties and does not persuade the Court that the Washington Legislature intended to limit "gift certificates" to only those vouchers with an identified monetary value. If anything, given the mandate by the Washington legislature to "liberally" construe the statute "to benefit consumers," RCW 19.240.005, the Court believes it should construe the term "gift certificate" liberally and, therefore, apply the definition that will "benefit customers" by going beyond mere monetary value.

Second, the Minnesota statute defines "gift certificate" as "a tangible record evidencing a promise, made for consideration, by the seller or issuer of the record that goods or services will be provided to the owner of the record *to the value shown in the record* . . . " Minn. Stat. § 325G.53, subd. 1(a) (emphasis added). But the Washington statute defines "gift certificate" as "an instrument evidencing a promise by the seller or issuer of the record that consumer gifts or services will be provided to the bearer of the record *to the value **or credit** shown in the record*." RCW 19.240.010 (emphasis added). The Court finds the additional language in the Washington significant and another reason to distinguish this case from *Wells II*. *See infra* Section III.A.1.b.(2).

Third, in *Wells II*, which was decided on summary judgment, the court found that the fact that plaintiff paid sales tax on his purchase supported the conclusion that he had purchased a specific service, not a gift certificate. 862 N.W.2d at 497–98. A witness in that case testified that, though the defendant imposed a sales tax when a customer purchased a taxable service, sales tax was not charged on the purchase of a gift certificate because the good or service for which the gift certificate was ultimately redeemed might or might not be taxable. *Id.* No such facts have been asserted by Defendant here given the early stage of this case. As the court reasoned in *McKee*, "because there has been no discovery on Audible's pricing structure, the Court finds that resolution of this claim at the pleading stage is premature." 2017 WL 7388530, at *19. Also like

ORDER ON MOTION TO DISMISS – 8

the *McKee* court, this Court finds that "dismissals on claims that set forth a novel legal theory before more factual development" should be disfavored. *Id.* (citing *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004)).

With respect to *Hughes*, the court in that case relied on an earlier decision issued by the Minnesota Court of Appeals in *Wells v. Holiday Cos., Inc.* (*Wells I*), 2013 WL 777384 (Minn. Ct. App. Mar. 4, 2013). In *Wells I*, the Minnesota Court of Appeals stated that "[a]ssuming without deciding that 'value' is limited to monetary value, we find it reasonable to infer from the complaint and the receipt that the promise is for a car wash valued at $7.99 when the service is provided, fulfilling the requirement that the car-wash receipt promises to deliver services to the value shown in the record." *Id.* This same assumption was adopted, in turn, by the District of Minnesota in *Hughes*. *See* 2013 WL 1314456, at *3. This Court will not rely on a case where the decision was based on an assumption of the term "value."

### (2) Interpretation of Statutory Language

"One . . . canon of construction is that 'we interpret a statute to give effect to all language, so as to render no portion meaningless or superfluous.'" *Ervin*, 169 Wn.2d at 823. (quoting *Rivard v. State*, 168 Wn.2d 775, 783, 231 P.3d 186 (2010)). Unlike the comparator statute pointed to by Defendant, which only references "the value shown in the record," the Washington statute's language includes "the value *or credit* shown in the record." *Compare* Minn. Stat. § 325G.53, subd. 1(a), *with* RCW 19.240.020(2)(a) (emphasis added).

The relevant statutory intent directs the Court to construe Chapter 19.240 RCW "liberally," "to benefit consumers." *See* RCW 19.240.005. And at least one other court has specifically acknowledged that "[a]lthough the majority of states support a narrowed construction of 'gift certificate,'" in contrast, the State of Washington's gift certificate statute "gives a very broad definition of 'gift certificate'" and is therefore distinguishable from other gift

ORDER ON MOTION TO DISMISS – 9

certificate statutes. *Reynolds v. Philip Morris U.S.A., Inc.*, No. C05-1876, 2006 WL 8442355, at *5 (S.D. Cal. Feb. 21, 2006). A broad interpretation of this already broad definition is in line with the intent of the Washington State Legislature that the statute be liberally construed to benefit consumers. RCW 19.240.005. Defendant asserts that "Minnesota's "[c]onsumer-protection statutes . . . are liberally construed in favor of protecting consumers." Dkt. No. 23 at 8 (omission in original) (quoting *Baker v. Best Buy Stores, LP*, 812 N.W.2d 177, 182 (Minn. Ct. App. 2012)). However, the Minnesota statute itself does not contain the explicit direction to liberally construe it to benefit consumers that the Washington statute does. *See generally* Minn. Stat. chapter 325G. Even if the Minnesota courts did interpret the statute liberally, the statute they were interpreting referred to "the value shown in the record," not "the value *or credit* shown in the record." *Compare* Minn. Stat. § 325G.53, subd. 1(a), *with* RCW 19.240.020(2)(a) (emphasis added). In other words, only the Washington statute explicitly prescribes broad interpretation, to the benefit of consumers, of what is an already a broader definition. Therefore, interpreting the term "value or credit shown in the record" as meaning "a stored value or credit worth a specified amount" of "money, services, *or* goods" or the balance credited to a person's account, respectively, is consistent with the statutory intent and other courts' interpretations of Washington's gift certificate statute.

The primary issue with Defendant's proposed interpretation is that it renders the Washington State Legislature's inclusion of the words "or credit" in the definition of gift certificate superfluous. Even if the Court were to adopt the Minnesota courts' interpretation of the "value" language in the Washington statute from *Hughes* or *Wells II*, the term "or credit" *must* capture vouchers that would not be captured by the "value" language. Defendant argues that "[t]he word "value" refers to vouchers that show a cash value that was purchased (e.g., a $10 Starbucks gift card), while the word "credit" captures store credits (e.g., a receipt showing a $25

credit after a product return)." Dkt. No. 23 at 8. But there is no meaningful distinction between these examples, which both show a redeemable cash value: $10 and $25, respectively. To interpret the distinction between "value" and "credit" as the method by which the holder came by their rights to the voucher's goods or services (i.e., an outright purchase or a return), where no other discussion of such methods appears in the statute, is an unnatural reading that does not comport with a reading of the statute in its entirety.

Furthermore, the Court is unpersuaded by Defendant's argument that "[i]nterpreting 'gift certificate' as encompassing *any* promise to provide 'consumer goods and services'— irrespective of whether they are issued in a stated *monetary* amount—would render the words 'to the value or credit shown' meaningless." Dkt. No. 19 at 10. The premise here is flawed; interpreting the term "to the value or credit shown" as not requiring a monetary anchor does not broaden the scope of the statute to encompass *any and all* promises to provide consumer goods and services. For example, a voucher containing a promise to provide "car washes" would not identify a value or credit and would thus be outside the scope of the statute; in contrast, a voucher containing a promise to provide "four car washes" would identify a credit to the voucher user, though not necessarily a monetary value. Using the same example, the statute's requirement that if "a purchase is made with a gift certificate for an amount that is less than the value of the gift certificate, the issuer must make the remaining value available to the bearer in cash or as a gift certificate at the option of the issuer" (RCW 19.240.020(3)) does not evidence that the statute intends only to attach to vouchers with identified monetary values—a voucher for "four car washes," when renewed for the first car wash, would then have a remaining value of three car washes, which could be made available in a "gift certificate" under the terms of the statute. *See* Dkt. No. 19 at 11.

ORDER ON MOTION TO DISMISS – 11

Defendant also argues that this interpretation of the statute leads to "absurd results," such as "time limits on monthly passes to a parking garage, admission passes to theme parks, physical training packages, music lessons, and bus passes good for a certain number of rides." Dkt. No. 19 at 12 (quoting *Hughes*, 2013 WL 1314456, at *4). But a monthly pass to a theme park, for example, does not contain an "expiration date"—the "value or credit shown in the record," so to speak, is admission to a particular park, an unlimited number of times, for a period of one month. The same is true of monthly bus passes, physical training packages, and other temporally restricted tickets: the nature of the good or service to be redeemed is that it is being provided for a particular duration. Similarly, a dated "club pass," "parking code," or "event ticket" does not contain an "expiration date" if its "value or credit" of is for admission to a particular club, parking area, or event *on a particular date*—neither later nor sooner. *See id.* at 14. The statute prohibits gift certificates that contains "an *expiration* date," not just "*a* date." Defendant's scenario would read out of the statute the term "expiration." In other words, an expiration date is a *use by* date, not a *use for* or *use on* date. Of course, any of the hypotheticals posed by Defendant will depend on the specific facts and what language is on the ticket or pass or package and, ultimately, is not the scenario before the Court in this case.

\* \* \*

Therefore, the Court finds that the definition of "gift certificate" in Washington's gift certificate statute does not impose a requirement that the voucher be issued for a specific monetary value.

### 2. Whether the Statute Requires a Voucher to be Giftable

Defendant also contends that "the ordinary meaning of 'gift certificate' provides guidance on *what* the Legislature sought to regulate: it plainly wanted to prohibit the expiration of certificates and cards that consumers purchase to offer as *gifts*." Dkt. No. 23 at 10. Defendant

argues that because its credits cannot be gifted, they cannot fall under the statute's definition of gift certificates. *See* Dkt. No. 19 at 14–15.

Defendant relies on *Reynolds v. Philip Morris USA, Inc.*, where the Ninth Circuit determined that "Marlboro Miles" rewards points were not "gift certificates" because they "are not typically given as gifts, are not certificates, and state no cash value," and accordingly fell outside the California gift certificate statute. 332 F. App'x 397, 398 (9th Cir. 2009). But California's gift certificate statute—unlike Washington's (as specifically distinguished from the California statute by the court below for its much broader definition, *see Reynolds*, 2006 WL 8442355, at *5)—"does not define what *is* a 'gift certificate.'" 332 F. App'x at 398; *see also Taylor v. 123RF LLC*, No. C16-4129, 2017 WL 8229624, at *1–2 (C.D. Cal. Nov. 30, 2017) (interpreting California's gift certificate statute to require voucher be "capable of being given as a gift" where statute provided "no particularly helpful definition of the term 'gift certificate'" (emphasis omitted)). Where, as here, "the Legislature expressly states that it is *defining* [a] term," the Court "cannot ignore this clear statutory language." *Washington State Coalition for the Homeless v. Dep't of Soc. and Health Servs.*, 133 Wn.2d 894, 907, 949 P.3d 1291 (1997); *see also* RCW 19.240.010 ("The definitions in this section apply throughout this chapter unless the context clearly requires otherwise."); *cf Bearden v. City of Ocean Shores*, 570 P.3d 684, 691 (Wash. 2025) ("We may use a dictionary to ascertain a word's plain and ordinary meaning of an *undefined* statutory term." (emphasis added)). The legislature could have chosen to specify a "transferable gift certificate" (rather than just "gift certificate") or to define a gift certificate as "a transferable instrument" (rather than just "an instrument"), but it chose to do neither.[1] For example, "[The Court] will not add language to a clear statue even if [it] believe[s] the

---

[1] By contrast, in the Uniformed Unclaimed Property Act referenced in the gift certificate statute (*see* RCW 19.240.005), the Washington Legislature chose to define a "Nonfreely *transferable* security." RCW 63.30.010 (2) (emphasis added).

ORDER ON MOTION TO DISMISS – 13

1 | Legislature intended something else but failed to express it adequately." *Coalition for the Homeless*, 133 Wn.2d at 904.

Here, whether or not the Legislature intended for the gift certificate statute to only apply to vouchers which are transferrable, it did not include such a requirement in its definition of "gift certificate." In line with the statute's instruction that it should be "liberally construed to benefit consumers," the Court declines to impose a limitation on what constitutes a "gift certificate" that does not appear in the statute.

In any event, Plaintiff's Complaint alleges, *inter alia*, that "Audible allows account holders to gift books to anyone . . . for example, an account holder could use 5 credits to buy books for 5 friends." Dkt. No. 1 ¶16. Plaintiff points out that in *Cody v. SoulCycle*, 2016 WL 4771392, the fact that a purchase could be redeemed for other people satisfied the giftability requirement. Dkt. No. 22 at 16. Defendant replies that the plaintiff in *Cody* provided a screenshot of the defendant's website showing that consumers could use the purchase on friends but that Plaintiff in this case "does not (and cannot) identify any statement by Audible suggesting that members' friends can use credits." Dkt. No. 23 at 11. But on a motion to dismiss, the Court "accept[s] as true all facts alleged in the complaint and construe[s] them in the light most favorable to plaintiff.'" *DaVinci Aircraft, Inc.*, 926 F.3d at 1122 (citation modified). Doing so, the Court finds Plaintiff has sufficiently alleged the giftability of the Audible credits to survive a motion to dismiss even if the statute included such a requirement.

\*    \*    \*

Therefore, Defendant's challenge to Plaintiff's claim under the Washington gift certificate statute, Chapter 19.240 RCW, fails.

//

//

ORDER ON MOTION TO DISMISS – 14

### B. Washington Consumer Protection Act Claim

Defendant challenges Plaintiff's Washington Consumer Protection Act ("CPA") claim on the grounds that Plaintiff fails to plead any predicate violation of the gift certificate statute. *See* Dkt. No. 19 at 15–16. However, as the Court discussed *supra* Section III.A, Plaintiff has stated a claim under the Washington gift certificate statute, Chapter 19.240 RCW.

Therefore, Defendant's challenge to Plaintiff's claim under the Washington CPA fails.

### C. Quasi-Contract Claim

Defendant challenges Plaintiff's quasi-contract claim on two grounds: first, that Plaintiff's quasi-contract claim fails because it hinges on the premise that Audible credits "illegally expired" when they did not; and second, that Plaintiff's quasi-contract claim fails because a valid membership agreement governs Plaintiff's Audible credits. *See* Dkt. No. 19 at 16–17. Having already dispensed with Defendant's first argument, *see supra* Section III.A, the Court turns to the issue of whether a valid contract containing an unenforceable provision can defeat a quasi-contract claim.

"A plaintiff who is party to a valid contract [may not] 'bring an action on an implied contract relating to the same matter, in contravention of the express contract.'" *Reading Hospital v. Anglepoint Group, Inc.*, No. C15-251, 2015 WL 13145347, at *2 (W.D. Wash. May 26, 2015) (emphasis omitted) (quoting *Chandler v. Wash. Toll Bridge Auth.*, 17 Wn.2d 591, 604, 137 P.2d 97 (1943)). But "the mere existence of a contract does not automatically invalidate a [quasi-contract] claim," which "may survive a motion to dismiss if a plaintiff challenges the validity of the contract." *Vernon v. Qwest Commc'ns Int'l, Inc.*, 643 F. Supp. 2d 1256, 1267 (W.D. Wash. 2009).

Defendant points to *Barrett v. Apple Inc.* to support its argument that "merely challenging the enforceability of a specific contractual provision does not render a contract invalid or create a

ORDER ON MOTION TO DISMISS – 15

1  right to bring a quasi-contract claim." Dkt. No. 19 at 14 (citing 523 F. Supp. 3d 1132, 1155–57

2  (N.D. Cal. 2021)). But in *Barrett*, the court reviewed—and dismissed—plaintiff's predicate

3  claims for fraud and unconscionability. *See Barrett*, 523 F. Supp. 3d at 1150–54. Here, unlike in

4  *Barrett*, Plaintiff has sufficiently alleged that Defendant's membership agreement may be invalid

5  or unenforceable with respect to the provisions governing the expiration of Audible credits. *See*

6  *supra* Section III.A; *see also Barrett*, 523 F. Supp. 3d at 1157 (finding that plaintiffs had failed

7  to allege invalidity or unenforceability of contract governing at-issue conduct). As was the case

8  in *Vernon v. Qwest Commc'ns Int'l*, "there has been no holding in the present case that a *valid*

9  contract between the parties governs" the conduct at issue. 643 F. Supp. 2d at 1267; *see also*

10 RCW 19.240.110 ("An agreement made in violation of the provisions of this chapter is contrary

11 to public policy and is void and unenforceable against the bearer.").

12        Therefore, Defendant's challenge to Plaintiff's claim for quasi-contract fails.

13 **D.      Request for Injunctive Relief**

14        Defendant argues that Plaintiff lacks standing to seek injunctive relief "because he cannot

15 plausibly allege a threat of 'actual and imminent' future harm." Dkt. No. 23 at 14. Plaintiff

16 contends that he has standing to seek injunctive relief because he asserts that he is "unwilling or

17 unable to purchase a product in the future, despite wishing to do so." Dkt. No. 22 at 19.

18        Under *Davidson v. Kimberly-Clark Corp.*, "a previously deceived consumer may have

19 standing to seek an injunction against false advertising or labeling, even though the consumer

20 now knows or suspects that the advertising was false at the time of the original purchase." 889

21 F.3d 956, 969 (9th Cir. 2018). "[P]lausible allegations that [a consumer] will be unable to rely on

22 the product's advertising or labeling in the future, and so will not purchase the product although

23 [they] would like to" are sufficient to assert standing for injunctive relief. *Id.* at 970. Here,

24

Plaintiff alleges that he "would purchase Audible credits without expiration dates but would not purchase them with expiration dates." Dkt. No. 22 at 20 (citing Dkt. No. 1 ¶ 23).

This case is comparable to *Davidson*. Here, Plaintiff alleges a threat of future harm in that he asserts that he "would purchase Audible credits in the future if he was sure that the credits would not expire," but that without an injunction, he "cannot depend on Audible honoring its credits without expiration dates." Dkt. No. 1 ¶ 23. While not precisely the hypothetical presented by the *Davidson* court, Plaintiff's plausible allegation is comparable to that court's hypothetical "plausible allegations that [a plaintiff] will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although [they] would like to," which it determined would provide standing for injunctive relief.

Therefore, Defendant's challenge to Plaintiff's claim for injunctive relief fails.

## IV. CONCLUSION

Accordingly, the Court DENIES Defendant's motion.

Dated this 19th day of September, 2025.

　　　　　　　　　　　　　　　　　　　　Tana Lin
　　　　　　　　　　　　　　　　　　　　United States District Judge